IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, #94102-022, | Civil No. 22-00168 JAO-RT |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND |
| v. | |
| ESTELA DERR, et al., | |
| Defendants. | |

## ORDER DISMISSING COMPLAINT IN PART WITH PARTIAL LEAVE GRANTED TO AMEND

Before the Court is a Prisoner Civil Rights Complaint ("Complaint"), ECF

No. 1, filed by pro se Plaintiff Kekai Watanabe ("Watanabe") pursuant to *Bivens v.*

*Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971).[1]  Watanabe alleges that four officials[2] at the Federal Detention Center in

Honolulu, Hawaiʻi ("FDC Honolulu") violated the Eighth Amendment by

---

[1]  On May 19, 2021, Watanabe pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  *See United States v. Watanabe*, Cr. No. 21-00066 HG (D. Haw.), ECF Nos. 25, 29.  Watanabe is currently scheduled to be sentenced on October 6, 2022.  *See id.*, ECF No. 36.

[2]  Watanabe names as Defendants Warden Estela Derr ("Warden Derr"), Unit Manager K. Robl ("Robl"), Staff Nurse Nielsen ("Nielsen"), and Chief Physician Dr. Kwon ("Dr. Kwon") in their individual and official capacities.  ECF No. 1 at 1–3.

threatening his safety and denying him adequate medical care.  ECF No. 1 at 6–8.

After screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b),

the Court concludes that Watanabe states a plausible denial of adequate medical

care claim against Nurse Nielsen in his individual capacity.  Watanabe's remaining

claims are DISMISSED with partial leave granted to amend.

## I.      STATUTORY SCREENING

The Court is required to screen all in forma pauperis prisoner pleadings

against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

*See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or

complaints that are frivolous, malicious, fail to state a claim for relief, or seek

damages from defendants who are immune from suit must be dismissed.  *See*

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v.*

*Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same

standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).

*See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under

this standard, a complaint must "contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted).  A claim is

"plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.   BACKGROUND[3]

Watanabe commenced this action by signing the Complaint on March 31, 2022. ECF No. 1 at 10. Watanabe alleges in Count I that the Bureau of Prisons ("BOP") and Robl, a unit manager at FDC Honolulu, were aware of Watanabe's "history of gang (Uso) affiliation." *Id.* at 6. Watanabe has been housed at FDC Honolulu in "unit 5A" alongside members of several "rival gangs" including "Murder Inc," "La Familia," "Paisa's," "Tango's," "MS-13," "Northeno," and "Soreno's." *Id.*

---

[3] At screening, Watanabe's well-pleaded factual allegations are accepted as true. *See, e.g.*, *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On July 12, 2021, Watanabe was sitting at a table in unit 5A when four members of the Paisa's gang attacked him.  *Id.* at 7.  The disturbance grew to include more than 35 individuals.  *Id.*  Watanabe was "severely beaten" during the disturbance by the four gang members who initially attacked him and "other Latino gang members."  *Id.*  At one point, Watanabe was beaten by someone wielding a "lock in a sock."  *Id.*

After order was restored in unit 5A, Watanabe along with approximately 20 other inmates were moved to the special housing unit ("SHU").  *Id.*  Watanabe's injuries were "documented," and he was told "that he would be put on 'Sick Call.'"  *Id.*  At 8 p.m. on the day of the disturbance, Watanabe asked correctional officers Noni and Woodson (who are not named as defendants) to be seen by medical staff because he was experiencing "severe pain and headaches."  *Id.*  Watanabe described his symptoms to Nurse Nielsen, and Nielsen responded by telling Watanabe "'to stop being a cry baby.'"  *Id.*  Nielsen denied Watanabe's request to be taken to the hospital.  *Id.*

Watanabe remained in the SHU for more than two months.  *Id.*  During this time, Watanabe "submitted multiple sick call and 'COP OUT' requests for medical attention."  *Id.*  According to Watanabe, he was given "over the counter pain medication" but "no actual treatment."  *Id.*  Watanabe was later diagnosed with a "fractured [coccyx] with bone chips in soft tissue around his tailbone."  *Id.*  These

injuries caused Watanabe "severe pain." *Id.* Upon his release from the SHU, Watanabe returned to unit 5A along with the other inmates involved in the July 12, 2021 disturbance. *Id.*

Watanabe alleges in Count II that Dr. Kwon had an "opportunity to properly diagnose [his] injuries" between July 2021 and January 2022, but he failed to do so. *Id.* at 8. During this period, "Health Services ignored multiple request[s] for treatment." *Id.* When Health Services identified Watanabe's fractured coccyx in February 2022, Watanabe was sent to see a specialist. *Id.*

Watanabe seeks three million dollars and "an Order against [Defendant] Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels." *Id.* at 10.

## III.   <u>DISCUSSION</u>

### A.   **Legal Framework For *Bivens* Claims**

In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006 (2017) (per curiam) (internal quotation marks and citation omitted). *Bivens* involved a suit against individual federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *See Bivens*, 403 U.S. at 389–90. Since *Bivens*, the Supreme Court has expanded this implied

cause of action only twice.  *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843,

1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the

only instances in which the Court has approved of an implied damages remedy

under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under

the Fifth Amendment's Due Process Clause for gender discrimination by a United

States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth

Amendment's Cruel and Unusual Punishment Clause for failure to provide

adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is

now a 'disfavored' judicial activity."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857

(quoting *Iqbal*, 556 U.S. at 675).  "This is in accord with the Court's observation

that it has 'consistently refused to extend *Bivens* to any new context or new

category of defendants.'"[4]  *Id.* (quoting *Malesko*, 534 U.S. at 68).  Indeed, the

---

[4]  The Supreme Court declined to create a *Bivens* remedy in the following cases:  a
First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367
(1983); a race discrimination suit against military officers, *see Chappell v.
Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military
officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due
process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S.
412 (1988); a procedural due process suit against a federal agency for wrongful
termination,  *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit
against a private halfway house operator under contract with the BOP, *see Corr.
Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of
Land Management officials against plaintiff for his exercise of Fifth Amendment
property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment
(continued . . .)

6

Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today." *Id.* at ___, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018). If a claim is precluded, that is the end of the matter. If a claim is not precluded, courts then apply a two-step test.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context. *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018). The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859. If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met. "First, the plaintiff must not have any other adequate alternative remedy." *Ioane*, 939 F.3d at 951 (internal quotation marks and citation omitted). "Second, there

---

(. . . continued)
suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843.

cannot be any 'special factors' that lead the court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages." *Id.* at 951–52 (some internal quotation marks, brackets, and citation omitted).  Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58.

## B.     Official Capacity Claims Under *Bivens*

Watanabe names the Defendants in both their individual and official capacities.  *See* ECF No. 1 at 1–3.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted).  "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." *Id.* (citation omitted).  Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor

in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Defendants in their official capacities are therefore DISMISSED with prejudice.

## C.     Supervisory Liability

Watanabe names as Defendants three supervisory officials at FDC Honolulu — that is, the warden, a unit manager, and the chief physician.  ECF No. 1 at 1–3.

"In the limited settings where *Bivens* does apply, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676 (citations omitted).  This is because "[t]he purpose of *Bivens* is to deter the *officer*."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1860 (internal quotation marks and citation omitted).  "*Bivens* is not designed to hold officers responsible for acts of their subordinates."  *Id.* (citation omitted).

A *Bivens* claim must be "brought against the individual official for his or her own acts, not the acts of others."  *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged." (citations omitted)).  Thus, to state a claim for relief under *Bivens* based on a theory of

supervisory liability, the plaintiff must allege facts showing that supervisory

defendants:

> (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal

quotation marks and other citation omitted).

Any claims against Warden Derr, Robl, Dr. Kwon solely based on their

supervisory positions are DISMISSED with prejudice. *See Fries v. Kernan*, Case

No. 1:18-cv-00652-LJO-SKO (PC), 2018 WL 11260954, at *8 (E.D. Cal. Dec. 5,

2018) ("[A]ny allegation that supervisory personnel . . . somehow liable solely

based on the acts of those under his or her supervision, does not state a cognizable

claim."). For a claim against Warden Derr, Robl, or Dr. Kwon to proceed,

Watanabe must plausibly allege that each one of them violated his rights through

their own actions. *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir.

2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must

instead plead that a supervisor, by her 'own individual actions,' violated the

Constitution." (citation omitted)).

### D.   Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (citations omitted).

#### 1.   Failure To Protect

Watanabe alleges in Count I that FDC Honolulu officials have failed to protect him from harm by members of "rival gangs."  ECF No. 1 at 6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat to safety claim.  The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety.  *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim." (citation omitted)).  Several district courts have also recognized failure to protect claims under *Bivens*.  *See McDaniels v.*

*United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018) (concluding that a failure to protect claim was not a *Bivens* expansion); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy, Murphy fails to state a plausible claim. *See Hernandez*, 582 U.S. at ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy — is appropriate in many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim." (citations omitted)).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citation omitted). Prison officials, therefore, "have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks, alteration, and citation omitted).

A prison official violates the Eighth Amendment, however, only when two requirements are met.  "First, the deprivation alleged must be objectively, sufficiently serious."  *Id.* at 834 (citations omitted).  "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (citation and footnote omitted).  Second, the plaintiff must show deliberate indifference — that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety."  *Id.* at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*

### a.   Prior To The July 12, 2021 Disturbance

Watanabe has not plausibly alleged that he faced a substantial risk of serious harm prior to July 12, 2021.  Although prison officials housed "rival gangs" together in unit 5A, Watanabe does not allege that there was a credible threat of rival gang violence prior to July 12.  For example, Watanabe does not allege that his gang — that is, Uso — had previous issues with the Paisa's, nor does Watanabe allege that he was specifically targeted for harm by Paisa's members because of his "history of gang . . . affiliation."  ECF No. 1 at 6.  Indeed, it is unclear if the four attackers were motivated by Watanabe's gang membership or something else.

To the extent Watanabe is suggesting that housing different gangs together necessarily amounts to an Eighth Amendment violation, he is mistaken.  *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, 'the number of gang members housed and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (alterations omitted)); *Wilson v. Pierce County*, Case No. 16-5455 RJB, 2017 WL 3876625 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment." (citing *Labatad*, 714 F.3d at 1160)).

Moreover, Watanabe has not plausibly alleged that any Defendant acted with deliberate indifference to his safety prior to July 12, 2021.  Watanabe does not say how any prison official knew of a substantial risk of gang violence and disregarded that risk.  Watanabe does not allege that he complained to any prison official about his placement in unit 5A prior to July 12, nor does he allege that any inmate voiced concern about gang-on-gang violence prior to the July 12 disturbance.  Even if prison officials knew both of Watanabe's historical affiliation with the Uso gang and that rival gangs were being housed together in unit 5A, that is not enough.  *See Murphy v. Shelby*, No. C 07-02299 JF (PR), 2009 WL 773499, at *4 (N.D. Cal.

14

Mar. 23, 2009) ("Even assuming that Defendants knew that Plaintiff and [another inmate] were members of rival gangs, this information alone is not sufficient to raise the inference that putting them in the same cell would create a substantial risk of serious harm[.]").

### b. After The July 12, 2021 Disturbance

Watanabe alleges that he remained in the SHU for more than two months after the July 12, 2021 disturbance. ECF No. 1 at 7. Prison officials then returned Watanabe to unit 5A. *Id.*

Watanabe has not plausibly alleged that he currently faces a substantial risk of serious harm in unit 5A. Watanabe does not allege that the four men who attacked him on July 12 or anyone else has harmed him since he returned to unit 5A. Nor does he allege that anyone has attempted or even threatened to harm him.

Watanabe notes that two inmates in his unit — one a member of a "Northeno gang" and the other a member of a "Hawaiian gang" — got into a fight on March 24, 2022. *Id.* This single incident between two inmates, however, falls short of showing a substantial risk of serious harm to Watanabe. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."). Indeed, nothing suggests that these two inmates got into a fight because of their respective gang associations.

15

In addition, Watanabe has not plausibly alleged that a prison official is acting with deliberate indifference to his safety.  Watanabe does not allege that he has complained to prison officials about his safety in unit 5A.  Thus, Watanabe has not alleged that a prison official knows of the danger he is purportedly facing.  *See M.G. v. United States*, 603 F. App'x 616, 617 (9th Cir. 2015) ("To plead deliberate indifference, [the plaintiff] must allege nonconclusory facts from which we can infer defendants . . . actually knew of the danger [the plaintiff] faced." (citations omitted)).

Watanabe's failure to protect claim is therefore DISMISSED with leave granted to amend.

### 2.    Denial Of Adequate Medical Care

Watanabe alleges in Count II that he was denied adequate medical care following the July 12, 2021 disturbance.  ECF No. 1 at 8.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care." *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).  "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757,

16

785 (9th Cir. 2019) (per curiam) (some internal quotation marks and citation omitted).  "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks, brackets, and citation omitted). "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks, brackets, and citation omitted).  "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

### a.   Nurse Nielsen

Watanabe alleges that he was "severely beaten" by four members of the Paisa's gang and "other Latino gang members" on July 12, 2021.  ECF No. 1 at 7. During the attack, someone beat Watanabe with a "lock in a sock." *Id.*  Later that evening, Watanabe was suffering from "severe pain and headaches," and he asked to be seen by medical staff. *Id.*  Watanabe "discussed his medical condition" with Nurse Nielsen and "begg[ed] for medical assistance," but Nielsen told him "to stop being a cry baby." *Id.* at 7–8.  Nielsen also refused to send Watanabe to the hospital. *Id.* at 7.

Months later, Watanabe was diagnosed with a fractured coccyx and "bone chips in soft tissue around his tailbone." *Id.* These injuries caused Watanabe "severe pain." *Id.* Construed liberally, Watanabe's allegations plausibly state a denial of adequate medical care claim against Nielsen in his individual capacity that may proceed.

### b.    Other Prison Officials

Watanabe also alleges that he submitted "multiple sick call and 'COP OUT' requests for medical attention" during the over two months that he spent in the SHU. *Id.* Watanabe, however, fails to say what he said in these requests, to whom he submitted them, and what he was told in response. To the extent Watanabe alleges that Dr. Kwon "had an opportunity to properly diagnose [his] injuries, but failed to do so," *id.* at 8, Watanabe fails to say what interactions, if any, he had with Dr. Kwon. Moreover, although Watanabe alleges that he "received no actual treatment," *id.* at 7, he acknowledges that he was given over-the-counter pain medication and that he was sent to a specialist once his fractured coccyx was diagnosed, *id.* at 7–8. Thus, Watanabe has not plausibly alleged that any other prison official consciously disregarded a serious medical need. Watanabe's denial of adequate medical care claims against any Defendant other than Nielsen are therefore DISMISSED with leave granted to amend.

E.      **Injunctive Relief Under *Bivens***

In his request for relief, Watanabe seeks three million dollars and "an Order against [Warden] Derr to follow United States law regarding the housing of federal inmates based on gang affiliation and determined security levels." *Id.* at 10.

"*Bivens* does not encompass injunctive and declaratory relief[.]" *Solida*, 820 F.3d at 1093; *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)); *Bacon v. Core Civic*, Case No.: 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) ("[I]injunctive relief may not be obtained through *Bivens* actions, which are limited to claims for monetary damages against persons in their individual capacities." (footnote omitted)).  Thus, to the extent Watanabe seeks injunctive relief in this action, such relief is not available under *Bivens*.[5]

---

[5]  "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement." *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (citation omitted).  To bring such a claim, a prisoner must:

> (1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts to state a colorable ongoing Eighth Amendment claim, (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief, and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation.

(continued . . .)

## IV.   **CONCLUSION**

(1)  Watanabe's claims against Defendants in their official capacities and against Warden Derr, Robl, and Dr. Kwon solely based on their supervisory positions are DISMISSED with prejudice.

(2)  Watanabe's request for injunctive relief under *Bivens* is DENIED.

(3)  Watanabe states a denial of adequate medical care claim in Count II against Nielsen in his individual capacity that may proceed.

(4)  Watanabe's threat to safety claim in Count I and his other denial of adequate medical care claims in Count II are DISMISSED with leave granted to amend.  Watanabe may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before June 20, 2022.

(5)  If he chooses to file an amended pleading, Watanabe must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be

---

(continued . . .)
*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations.").  For the reasons set forth above, however, Watanabe fails to state a colorable failure to protect claim, and Watanabe acknowledges that he is now receiving medical care for his fractured coccyx.

short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.

(6)  IN THE ALTERNATIVE, Watanabe may notify the Court in writing on or before June 20, 2022 that he elects to proceed with his denial of adequate medical care claim in Count II against Nielsen, and this claim shall be served. Proceeding on his claim against Nielsen in Count II does not preclude Watanabe from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders of this Court.  If Watanabe fails to file either an amended pleading or a notice of election, the Court will direct that the Complaint be served as limited by this Order.

(7)  The Clerk is DIRECTED to send Watanabe a prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading rather than immediately stand on his denial of adequate medical care claim in Count II against Nielsen.

//

//

//

21

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, May 19, 2022.



Jill A. Otake
United States District Judge

*Watanabe v. Derr, et al.*, Civil No. 22-00168 JAO-RT; ORDER DISMISSING COMPLAINT IN PART WITH
PARTIAL LEAVE GRANTED TO AMEND

22