IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KEKAI WATANABE, #94102-022, <br><br> Plaintiff, <br><br> vs. <br><br> ESTELA DERR, et al., <br><br> Defendants. | CIVIL NO. 22-00168 JAO-RT <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Pro se Plaintiff Kekai Watanabe ("Watanabe") brought this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendant Francis Nielsen ("Nielsen"), a paramedic at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), violated the Eighth Amendment's prohibition against cruel and unusual punishment by declining Watanabe's request to visit a hospital after he was injured during a gang riot.[1] *See* ECF No. 8 at 6–9. Nielsen filed a Motion to Dismiss First Amended

---

[1] Watanabe also asserted claims against the warden, a unit manager, and a doctor at FDC Honolulu, but those claims were previously dismissed by the Court. *See* ECF No. 9 at 11–16, 18–19.

Complaint ("Motion") arguing, among other things, that Watanabe's claim is not cognizable under *Bivens*.[2]  *See* ECF No. 20; ECF No. 20-1 at 10–23.  The Court agrees that Watanabe cannot pursue his claim against Nielsen under *Bivens* and, for the reasons stated below, GRANTS the Motion.

## I.    BACKGROUND

On July 12, 2021, Watanabe was severely beaten during a gang riot at FDC Honolulu with an improvised weapon, called a "lock in a sock."  ECF No. 8 at 7.  After order was restored, prison officials documented Watanabe's known and visible injuries, and they told Watanabe that he would be put on sick call.  *Id.*  Later the same night, Watanabe asked to be seen by medical staff.  *Id.*  Watanabe discussed his severe pain and headaches with two correctional officers who are not parties to this action.  *Id.*

At some point, Watanabe also described his medical condition to Nielsen.[3]  *Id.*  Nielsen told Watanabe "to stop being a cry baby."  *Id.*  Nielsen also denied

---

[2] Even assuming that Watanabe's claims were cognizable, Nielsen argues that qualified immunity shields him from personal liability.  *See* ECF No. 20; ECF No. 20-1 at 23–28.  Because no *Bivens* remedy is available to Watanabe, the Court does not reach Nielsen's qualified immunity argument.  *See Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) ("Because [plaintiff] has no cause of action under *Bivens*, we need not consider whether [defendant] would be entitled to qualified immunity.").

[3] Citing Watanabe's medical records, Nielsen asserts that this meeting took place on July 16, 2021—that is, four days after the riot.  *See* ECF No. 20-1 at 8; ECF No. 20-3 at 5.  Under Federal Rule of Civil Procedure 12(b)(6), however, this Court's

Watanabe's request to be taken to the hospital. *Id.* Watanabe does not describe any further interactions with Nielsen.

According to Watanabe, he remained in FDC Honolulu's special housing unit for two months after the riot. *Id.* During this period, Watanabe submitted numerous requests for medical attention. *Id.* Although prison officials provided Watanabe with over-the-counter pain medication, he received no "actual treatment." *Id.*

Sometime in February 2022, Watanabe was diagnosed with a fractured coccyx, with bone chips in the surrounding soft tissue. *Id.* at 7, 9. Prison officials then agreed to send Watanabe to a specialist. *Id.* at 9. As of July 2, 2022, Watanabe was still waiting to see a specialist. *Id.* at 6.

On July 7, 2022, the Court received the operative pleading in this suit—that is, the First Amended Complaint ("FAC"). *Id.* In the FAC, Watanabe alleges that

---

review is generally limited to the contents of the complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although "[a] court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), Watanabe did not attach his medical records to the First Amended Complaint, he does not refer to them in that pleading, and the Court is currently unable to take judicial notice of those documents. *See Dillingham v. Garcia*, No. 1:19-cv-00461-AWI-GSA-PC, 2019 WL 2577196, at *2 (E.D. Cal. June 24, 2019) ("The court shall not take judicial notice of prison medical records absent a showing that the medical records were matters of public record.").

Nielsen violated the Eighth Amendment's prohibition against cruel and unusual punishment by "denying him proper medical treatment that would have properly diagnosed and treated his injury." *Id.* at 9. Watanabe seeks three million dollars in damages. ECF No. 8 at 11.

Nielsen filed the Motion on January 13, 2023, arguing that the FAC should be dismissed because Watanabe's constitutional tort claim presents a new context, which is not cognizable under the Supreme Court's current *Bivens* framework. *See* ECF No. 20 at 2; *see also* ECF No. 20-1 at 10–23. Watanabe filed neither an opposition to the Motion nor a statement setting forth his position on the Motion. *See* LR7.2. The Court will decide the Motion without a hearing pursuant to Local Rule 7.1(d). *See* ECF No. 21.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). Conclusory allegations of law, unwarranted

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell*, 266 F.3d at 988; *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Watanabe is appearing pro se; thus, the Court liberally construes his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam*); Eldridge*

*v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  The Court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Rowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

### III.   ANALYSIS

Watanabe brought this suit pursuant to *Bivens* alleging that Nielsen violated the Eighth Amendment's prohibition against cruel and unusual punishment by "denying him proper medical treatment that would have properly diagnosed and treated his injury." *See* ECF No. 8 at 9.  Before the merits of this claim can be reached, the Court must first decide whether a *Bivens* remedy is available to Watanabe.  *See, e.g.*, *Manansingh v. United States*, Case No. 2:20-cv-01139-DWM, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place.").  Because no such remedy exists, the FAC and this action must be dismissed.

### A.   Legal Framework for Determining Whether a *Bivens* Remedy Exists

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone*, 59 F.4th at 454 (quoting 42 U.S.C. § 1983).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights." *Id.* In *Bivens*, the Court held that a plaintiff could seek damages from Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 397. The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment. 442 U.S. 228, 230–31 (1979). Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment by failing to treat severe asthma that ultimately resulted in the prisoner's death. 446 U.S. 14, 16–18 (1980). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id.* at 1809. Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[4] *Abbasi*, 582 U.S. at 135 (citation omitted).

---

[4] The Supreme Court has declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. If the answer to this question is "no," then no further analysis is required, and the claim may proceed. *See Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018). If the answer is "yes," then the court proceeds to step two. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[5] *Pettibone*, 59 F.4th at 454 (citation omitted).

---

[5] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022). The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step.

9

### B. Watanabe's Claim Against Nielsen Presents a New Context

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743. A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139. The Supreme Court has provided a non-exhaustive list of differences that may be "meaningful" including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context. *Abbasi*, 582 U.S. at 147. In

---

*Mejia v. Miller*, No. 21-56282, 2023 WL 2350630, at *4 (9th Cir. Mar. 2, 2023); *see also Pettibone*, 59 F.4th at 454 ("Before affording a plaintiff a cause of action under *Bivens*, a court must go through two steps[.]"). The Court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Watanabe's claim.

other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 2023 WL 2350630, at *5 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles. In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property. 142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, although Watanabe's claim has some parallels to the claims in *Carlson*, the specifics of Watanabe's allegations are dissimilar in both their "nature and severity" from the facts in *Carlson*. *Martinez v. United States Bureau of Prisons*, Case No. 5:15-cv-02160-TJH (AFM), 2019 WL 5432052, at *9 (C.D. Cal. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 5424414 (C.D. Cal. Oct. 22, 2019), *aff'd*, 830 F. App'x 234 (9th Cir. 2020).

In *Carlson*, an inmate was diagnosed as a "chronic asthmatic" when he entered the federal prison system. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir.

1978), *aff'd*, 446 U.S. 14 (1980). The inmate was later hospitalized for eight days because of symptoms associated with this condition, and the treating physician recommended that the inmate be transferred to a different facility. *Id*. Despite the doctor's recommendation, the inmate remained in the same facility. *Id*. Then, when the inmate was admitted to the prison hospital with an asthmatic attack, he was not seen by a doctor for eight hours. *Id*. As the inmate's breathing became more difficult, a non-licensed nurse in charge of the prison hospital deserted the inmate to distribute medication elsewhere. *Id*. When the nurse returned, he attempted to use a respirator on the inmate. *Id*. The nurse did this despite being told two weeks earlier that the respirator was broken. *Id*. When the inmate told the nurse that the respirator was making his breathing worse, the nurse administered two doses of a drug contraindicated for someone suffering an asthmatic attack. *Id*. A half-hour after the second injection, the inmate suffered a respiratory arrest. *Id*. The nurse and another prison official then brought emergency equipment to administer an electric jolt to the inmate, but neither man knew how to operate machine. *Id*. Only at that point was the inmate taken to a hospital, where he was pronounced dead. *Id*.

Watanabe's claim against Nielsen differs from the claims in *Carlson* in several important ways. First, the nature of Watanabe's claim differs from those in *Carlson* because it does not relate to a course of medical treatment provided to him

at FDC Honolulu. Instead, Watanabe alleges that, sometime after the riot ended, Nielsen interfered with the proper diagnosis and treatment of his injuries by denying his request to be taken to the hospital. ECF No. 8 at 9. Although it is well settled that state prisoners can establish deliberate indifference in the context of an Eighth Amendment claim by showing that officials "intentionally interfered with . . . medical treatment," *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000), that was not the basis for the claims in *Carlson*. Again, the claims in *Carlson* were largely based on treatment provided to a federal inmate during a medical emergency. Thus, Watanabe seeks an extension of *Bivens* to an area not addressed in *Carlson*. *See Donaldson v. Garland*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) (finding new context where plaintiff alleged that prison officials interfered with medical care by cancelling surgery), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022).

Second, the severity of Watanabe's claim does not compare to the seriousness of the claims in *Carlson*. While the pain that Watanabe experienced because of his fractured coccyx and bone chips is certainly regrettable, it is not akin to the medical emergency faced by the inmate in *Carlson* that ultimately resulted in that inmate's death. *See Washington v. Fed. Bureau of Prisons*, Civil Action No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022)

(noting that "[p]laintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition" in concluding that case presented a new context); *Peguero v. Quay*, No. 1:22-CV-00057, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (concluding that chronic pain caused by two herniated discs, scoliosis, and nerve damage was a new context because it did not involve a "medical life-threatening emergency").

      These differences in the "nature and severity" of Watanabe's claims compared to those in *Carlson* are meaningful.  *See Martinez*, 2019 WL 5432052, at *9; *see also Prescott v. United States*, Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) (concluding that assigning a federal prisoner to an inhospitable bed and refusing to move him even after a doctor's order presented a new context), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Davis v. Fed. Bureau of Prisons*, Case No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023) (concluding that federal prisoner's claim that defendant performed an unauthorized surgical procedure presented a new context).  Indeed, allowing Watanabe's claims to proceed risks "transforming [the court] into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if

14

any, cross the threshold into constitutional injury."[6] *Washington*, 2022 WL 3701577, at *5.

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is a relevant consideration in deciding whether a case presents a new context. *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. 1793 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.") (citation omitted). As explained in the following section, special factors weigh against recognizing a *Bivens* remedy for Watanabe's claim, including the existence of the Federal Bureau of Prisons' administrative remedy program. Because this factor was not considered by the Court in *Carlson*, this is

---

[6] A few courts have allowed to proceed claims involving "medical treatment." *See, e.g.*, *Ibuado v. Fed. Prison Atwater*, 2023 WL 2312395, at *4 (E.D. Cal. Mar. 1, 2023) (claims based on side effects of medication); *Dinkins v. United States*, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022) (claims based on failure to treat sinus blockage), *report and recommendation adopted*, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022). These decisions are not instructive here, where Watanabe's claim is based on interference with medical care, not a course of medical treatment. Moreover, the Court does not find the analyses in these decisions persuasive. Neither decision addresses the Supreme Court's statement that "similar allegations," "'almost parallel circumstances,'" or a "similar 'mechanism of injury'" are only "superficial similarities," and they are "not enough to support the judicial creation of a cause of action." 142 S. Ct. at 1805. Nor do these decisions address the Supreme Court's warning that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances with . . . *Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809.

another reason that Watanabe's claim arises in a new context. *See Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

For all these reasons, Watanabe's claim is meaningfully different from the claims in *Carlson*, and the court must proceed to step two.

### C. Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (citation omitted). Thus, at step two, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1805 (citation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted). In conducting this analysis, courts must ask "'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.' *Id.* (citation omitted). If

16

there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted). This will be the outcome in "most every case." *Id*. at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804. It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed. *Id.* Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Here, the Court cannot recognize a *Bivens* remedy because alternative remedies are available to Watanabe. First, the Executive, through the Federal Bureau of Prisons, has an alternative remedial program for federal prisoners like Watanabe. *See* 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . .

17

have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Taylor v. Kobayashi*, No. 22-16017, 2023 WL 2400879, at *1 (9th Cir. Mar. 8, 2023) (unpublished) (concluding that "the Bureau of Prisons' formal review process for inmate complaints" foreclosed the availability of a *Bivens* remedy). Second, Congress has provided an alternative remedy through the Federal Tort Claims Act ("FTCA"). *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action."). While a single alternative remedy is sufficient to foreclose a *Bivens* remedy, at least two are available to Watanabe. Thus, the Court cannot "second-guess" the judgments made by Congress and the Executive "by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

     As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 142 S.

Ct. at 1800.  This case does not present the unusual circumstances required to recognize a *Bivens* remedy.

## IV.    CONCLUSION

Because Watanabe's claim arises in a new context and at least one special factor weighs against recognizing a new *Bivens* remedy, Defendants' Motion, ECF No. 20, is GRANTED for failure to state a claim upon which relief can be granted.  Because amendment would be futile, Watanabe's claim against Nielsen in the FAC is DISMISSED without leave to amend.  *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).  The Clerk of Court is DIRECTED to close the case and enter judgment in favor of Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, March 10, 2023.



Jill A. Otake
United States District Judge

CIVIL NO. 22-00168 JAO-RT; *Watanabe v. Derr*; Order Granting MTD FAC